McDONALD ET AL., RESPONDENTS, GOODKIND, APPELLANT.

[No. 1,082.]

[Submitted April 13, 1899.  Decided April 26, 1899.]

*Sales—Fraud—Rescission — Waiver — Stoppage in Transitu.·*

A seller, three days after shipping goods on the positive statement of the buyer as to his solvency, received a report that, in some quarters it was the opinion that the buyer owed more than he stated; that his real estate was worth much less than he stated; that he was generally believed to be heavily in debt to the banks; that no estimate

of his worth is offered; that he is a man of good general reputation, and has a clear business record; that he meets all drafts on presentation, and apparently has the confidence of his bankers;—but, still relying on the buyer's statement, the seller permitted the goods to be delivered. *Held*, that, under such information as that imparted by this report, the failure to stop the goods in transit, or to retake them from the buyer, was not a waiver of the right to rescind and retake them from the buyer's assignee.

*Appeal from District Court, Lewis and Clarke County; H. N. Blake, Judge, and H. C. Smith, Judge.*

ACTION by R. L. McDonald and others against E. I. Goodkind. From a judgment for plaintiffs, and from an order denying a new trial, defendant appeals. Affirmed.

*H. G. McIntire*, for Appellant.

This is an action to rescind a contract of sale upon the ground of fraud on the part of the vendee, and to enable plaintiffs to recover, it must be shown that they parted with the goods in question under a *bona fide* reliance upon the false statements made by Israel to the Bradstreet Agency. (*Dingle* v. *Trask* (Colo.) 42 Pac. 186; 2 Pomeroy's Eq. Juris. (2d Ed.) Sec. 890.) "But false representations or fraud will not avoid a sale unless it appears that a seller was thereby induced to do that which he would probably not have done except for such fraud or deception." (*Klopenstein* v. *Mulcahy*, 4 Nev. 296; *Slaughter's Administrators* v. *Gerson*, 13 Wall. 379; *Long* v. *Warren*, 68 N. Y. 426; *Oberlander* v. *Spiess*, 45 N. Y. 175; *Griswold* v. *Hazels*, 71 N. W. Rep. 972.) And plaintiffs must be justified in relying upon the representations made. "The foregoing requisite that the representation must be relied upon plainly includes the supposition that the party is justified, under all the circumstances, in thus relying upon it. * * * If after a representation of fact, however positive, the party to whom it was made institutes an inquiry for himself, has recourse to the proper means of obtaining information, and actually learns the real facts, he cannot claim to have relied upon the misrepresentation and to have been misled by it." (2 Pomeroy's Eq. Juris. (2d Ed.) Secs. 891-892-893; *Farr* v. *Peterson*, 64 N. W. 863; *Slaughter's Adminis-*

*trators* v. *Gerson, supra*; *Tootle* v. *Petrie*, 65 N. W. 43; *Starr* v. *Bennett*, 5 Hill, 302.) "It has been repeatedly held that it is not every willful misrepresentation, even of a fact, which will avoid a contract upon the ground of fraud if it be of such a nature that the other party had no right to place reliance on it and it was his own folly to give credence to it; for courts of equity, like courts of law, do not aid parties who will not use their own sense and discretion upon matters of this sort." (*Dugan* v. *Cureton*, 1 Ark. 31; *Moore* v. *Turbeville*, 5 Am. Dec. 642; *Crocker* v. *Manley*, 45 N. E. 577; *Moore* v. *Recek*, 44 N. E. 868.) Conceding that plaintiffs may have been justified in extending the credit and shipping the goods upon the representations contained in the first report received by them from the Bradstreet agency, still they certainly were not justified in permitting the goods to pass from their control and into the hands of the consignee after receiving the second report. It seems clear that the situation of the parties to the action is precisely as it would be had plaintiffs received the second report before the goods were shipped. Such goods were as much under their control as if they had not been shipped to the consignee, for they could at any time prior to their delivery have rescinded the sale and regained possession of them. (*Kearney Milling & El. Co.* v. *U. P. Ry. Co.*, 66 N. W. 1059.) And the failure of plaintiffs to so stop the goods in transit constituted in effect a ratification and affirmance of the contract of sale after knowledge of the true condition of affairs. Having ratified the contract of sale with knowledge that the representations upon which it was founded were false, plaintiffs cannot now maintain this action to rescind and set it aside. (Bigelow on Estoppel (3d Ed.) 562; *First Nat. Bank* v. *Skinner*, 43 Pac. 679.) "Though a contract be in fact wholly invalid when executed, still * * * if it be acted upon afterwards by the parties to it as valid, they will, if *sui juris*, be estopped thereafter to allege its invalidity." (Bigelow on Estoppel (3d Ed.) 574; *Wachsmuth* v. *Sims*, 32 S. W. 821; *Foster* v. *Rowley*, 67 N. W. 1077, and cases cited; *Hallahan* v. *Webber*, 40 N. Y. S. 103; *Kearney Milling & El.*

*Co.* v. *U. P. Ry. Co.*, *supra*; *Bernard Leas Mfg. Co.* v. *Waller*, 36 S. W. 531; *Bank* v. *McKinney*, 66 N. W. 280.)

"The person who has been mislead is required, as soon as he learns the truth, with all reasonable diligence to disaffirm the contract or abandon the transaction, and give the other party an opportunity of rescinding it, and of restoring both of them to their original position. If after discovering the untruth of the representations, he conducts himself with reference to the transaction as though it were still subsisting and binding, he thereby waives all benefit of and relief from the misrepresentations." (2 Pomeroy's Eq. Juris. (2d Ed.) Secs. 817-897; *Schiffer* v. *Dietz*, 83 N. Y. 300; *Lindsley* v. *Ferguson*, 49 N. Y. 623; 5 Lawson's Rights and Remedies, Secs. 2361-2362; *Wood* v. *Staudenmayer*, 43 Pac. 760; *Association* v. *Rainbolt*, 67 N. W. 495; *Weaver* v. *Shriver*, 30 Atl. Rep. 189; *Pollock* v. *Smith*, 69 N. W. 312.)

*Walsh & Newman*, for Respondents.

The right to rescind a contract is clearly defined by the Code. Among the grounds for recision are fraud and mistake. (Civil Code, Secs. 2112-2271.) Fraud consists of: (1) The suggestion as a fact, that which is not true by one who does not believe it to be true. (2) The positive assertion in a manner not warranted by the information of the person making it of that which is not true, though he believes it to be true. * * * (5) Any other act fitted to deceive. (Civil Code, Sec. 2117.) Mistake is defined as: Belief in the present existence of a thing material to the contract which does not exist. (Civil Code, Sec. 2122.) It is well settled that any false statements or representations made by a purchaser to the vendor, by means of which the latter is induced to part with property, which, were it not for such statements, he would not have done, will avoid the sale, and he can rescind the sale and recover his goods. (*Farwell Co.* v. *Boyce*, 17 Mont. 83; *Kopenstein* v. *Mulcahey*, 4 Nev. 30; *Whittaker* v. *Bank*, 59 N. W. 395 (Mich.); *Silberman* v. *Munroe*, 62 N. W. 555 (Mich.); *Reed* v. *Cowduroy*, 44 N. W. 351 (Ia.); *Schram*

v. *Stouse*, 28 S. W. 262 (Tex.); *Lowden* v. *Fisk*, 27 S. W. (Tex.); *Bank* v. *Bamberger*, 13 S. W. 959 (Tex.); *Newell* v. *Randall*, 19 N. W. 972 (Minn.); *Work* v. *Jacobs*, 53 N. W. 993 (Neb.); *Syms* v. *Bonner*, 48 N. W. 472 (Neb.); *Tootle* v. *Bank*, 52 N. W. 396 (Neb.); *Krauss* v. *Thompson*, 14 N. W. 266 (Minn.); *Oswego S. F.* v. *Lindrum*, 10 N. W. 900 (Ia.); *Doane* v. *Lockwood*, 4 N. E. 500 (Ill.); *Hiller* v. *Ellis*, 18 So. 95-98; *American Sugar Refining Co.* v. *Fancher*, 145 N. Y. 552, 40 N. E. 206; *Amer. & Hightower*, 70 Cal. 440, 11 Pac. 697; *Singer* v. *Schilling*, 74 Wis. 369; *Judd* v. *Weber*, 55 Conn. 267; *Stephenson* v. *Weathersby*, 45 S. W. 987; *Gough* v. *St. John*, 16 Wend. 645; *Reed* v. *Pinney*, 35 Ill. App. 612. *Bugg* v. *Westheimer-Schwartz Shoe Co.*, 64 Ark. 12.) The evidence shows that plaintiffs relied solely upon the statements made by Israel when they shipped and delivered the goods. But it is not necessary that they relied solely upon the statements, if they were a material inducement and influenced plaintiffs in delivering the goods and extending the credit to Israel. (*Handy* v. *Waldron*, 35 St. 884; *Sioux City National Bank* v. *Norfolk National Bank*, 56 Fed. 139; *Wright* v. *United States Mortgage Co.*, 42 S. W. 789; *McKenzie* v. *Wyman*, 22 So. 508.) It is sufficient to entitle plaintiffs to recover if the statements are made to a commercial agency and they are subscribers or patrons of that agency. (*Hinchman* v. *Weeks*, 48 N. W. 790; *Blacknall* v. *Rowland*, 13 S. E. 191; *Ensign* v. *Hoffman*, 4 At. 189; *Farwell Co.* v. *Boyce*, 17 Mont. 83; *Silberman* v. *Monroe*, 62 N. W. 555; *Schram* v. *Strouse*, 28 S. W. 262; *Bank* v. *Bamberger*, 13 S. W. 959; *Lowden* v. *Fisk*, 27 S. W. 180; *Converse* v. *Sickles*, 44 N. Y. S. 1080; *Howell* v. *Berger*, 44 N. Y. S. 259; *P. Cox Shoe Co.* v. *Nelan*, 75 N. W. 316.) It is contended that when plaintiffs received the second report from Bradstreet's, on July 2nd, they should have stopped the goods in transit, and because they did not so do, that they are estopped from prosecuting an action to rescind the sale and recover the goods. The principle of estoppel cannot be invoked, because the defendant is not a *bona fide* purchaser for value, and cannot as-

sert any defense or claim any rights that Israel could not if the suit was prosecuted against him instead of the defendant. (*Merchants Bank* v. *Greenhood*, 16 Mont. 395; Burrill on Assignments, 6th Ed. p. 482 and note 5; *Warner* v. *Jamison*, 50 Ia. 70; *Singer* v. *Schilling*, 74 Wis. 369; *Bridgford* v. *Barbour*, 80 Kentucky 529; *Tyler* v. *Aberg*, 3 Atl. 904, 65 Md. 18.) When a person has the right of election between two remedies, he may prosecute his action according to his election, and the defendant cannot complain because he did not pursue another and different remedy. The right to rescind a sale and recover property on the grounds of fraud is well established. The right to stop goods in transit is likewise clearly established and is defined by the Civil Code. The distinction between rescinding a sale on the grounds of fraud, and stopping goods in transit on the grounds of insolvency is clearly defined, and the line of demarcation is as clearly drawn as the line between an action in replevin and an action for the purchase price of the goods. Section 3970 of the Civil Code provides that when the purchase price has not been paid, the seller may, upon the insolvency of the buyer becoming known to him, and after parting with the property, stop it while on its transit and resume possession thereof. Section 3971 declares that a person is insolvent within the meaning of the last section when he ceases to pay his debts in the manner usual with persons of his business or when he declares his inability or unwillingness to do so. Section 3974 provides that stoppage in transit does not of itself rescind a sale, but is a means of enforcing the lien of the seller. The information obtained by plaintiffs through the second report of Bradstreet's was not sufficient to warrant them in exercising the right of stoppage in transit. While Mr. Israel, as is shown by subsequent events, was then actually insolvent, that report did not show that he was insolvent within the meaning of Section 3971 of the Civil Code, which alone would justify stopping the goods in transit, but on the contrary, it stated that he paid all drafts on presentation, thus showing solvency within the meaning of that section. "Insolvency of

the buyer must be based upon well founded information, and if from misinformation, the seller stops the goods when the buyer is not actually insolvent, the buyer is entitled to the goods and to the indemnification for the expenses incurred in consequence of the stoppage." ( *Walsh* v. *Blakely*, 6 Mont. 200; *More* v. *Lot*, 13 Nev. 383.) Can it be said as a matter of law, based upon the facts shown in the record in this case, that the plaintiffs were bound at their peril to stop the goods in transit or be forever barred from availing themselves of another well defined and well established remedy, that is to rescind the sale and recover the goods on the grounds of a false and fraudulent representation made by Israel? Goods cannot be stopped in transit on the grounds that they were procured by false and fraudulent representations. "It is wholly inconsistent with the principles upon which the right is based to permit its exercise in a case of fraud or misrepresentation in the sale. That would be a ground for rescinding the sale, not for restoring the vendor to his lien. (See note in 29 American Decisions, on page 386.) Long prior to the adoption of our Code, the doctrine was well established that goods could be stopped in transit only upon the grounds of the insolvency of the purchaser, and the right could not be exercised in case of fraud or misrepresentations. (Benjamin on Sales (Corbin's Ed.) Secs. 1229, 1243; *Hause* v. *Judson*, 29 Am. Dec. 377, and notes.)

**PER CURIAM.**—Plaintiffs, merchants at St. Joseph, Mo., having received from one Israel, a merchant at Helena, Mont., an order for certain goods, to be shipped June 28, and to be paid for December 31, 1895, applied to the Bradstreet Company, a commercial agency, for information as to the financial standing and responsibility of the prospective purchaser, in order to determine whether the goods should be sold to him on credit, in response to which the Bradstreet Company, on June 10, furnished to plaintiffs a report based upon and containing a statement made by Israel to that company in February, 1895, in which he claimed assets of the value of $165,-

000, and asserted that his debts amounted to but $36,300. Believing the statement of Israel to be true, and relying upon it, plaintiffs decided that it would be safe to sell the goods upon the terms proposed; and accordingly, on June 29th, they delivered them to a common carrier for transportation to Israel.    They would not have sold the goods on credit, nor parted with the actual possession thereof, if they had not believed in, and relied upon, the truth of Israel's statement. The statement was in fact untrue, since at the time it was made Israel owed at least $78,000, and his assets did not exceed in value $90,000.    Its representations were both false and fraudulent, and were made for the purpose of obtaining credit.    Israel entered into the contract of purchase without any intention of paying for the goods.    He received them on July 12, and on August 19, 1895, he executed an assignment for the benefit of his creditors to defendant, into whose possession, as assignee, the goods passed.    Between the time the statement was made, in February, and the day of the assignment, Israel sustained no unusual loss, nor did he incur any extraordinary expense; yet the inventory, verified and filed by him within a few days after the assignment, shows assets of $85,173.08 and liabilities of $102,441.14.    Plaintiffs notified defendant that they rescinded the sale to Israel, and demanded possession of the goods, and, upon the refusal of defendant to surrender it, instituted this action on September 3, 1895, to recover the goods.    The court found (in addition to the finding hereinafter mentioned) substantially and in effect, the facts to be the foregoing, and rendered judgment for the plaintiffs, from which and the order denying a new trial, defendant appeals.

There is no controversy in this court over the facts just stated.    The defendant offered no evidence, and moved for a nonsuit, in the court below.    For the purposes of the appeal, he concedes that the plaintiffs were induced to make the sale and to deliver the goods to the carrier by means of the false and fraudulent representations contained in Israel's statement, and that they were justified in so doing.    He concedes, also,

that Israel purchased the goods without the intention of paying for them. The court further found that plaintiffs, as soon as they discovered the falsity of Israel's representations, notified defendant that the sale was abrogated. This finding is assailed as as being contrary to the following evidence: On June 28, 1895, the Bradstreet Company at Helena again forwarded to its office at St. Joseph a copy of the February statement of Israel, and the company's report thereon of June 10th; adding as comment, *inter alia*: "In some quarters it is the opinion that he is owing more than he stated, it being said that he is owing his brother-in-law, L. Auerbach, about $8,000; same not appearing in his statement. Mr. Israel's real estate, at present market value, is not worth to exceed $35,000. He is generally believed to be heavily in debt to the banks, and no estimate of his worth is offered. Is a man of good general reputation, and has a clear business record. He meets all drafts on presentation, and apparently has the confidence of his bankers." This additional report, which materially reduced Israel's credit rating, was communicated to plaintiffs on July 2d,—three days after the goods had been delivered to the railway company for Israel. The manager of the credit and financial department of plaintiffs testified that, if the second report had been received before the shipment of the goods, it would not have changed his opinion of the statement made by Israel concerning his financial condition, and that, as he relied upon the truthfulness of the statement made by Israel, the comments of the Bradstreet Company on his condition were not such as to change his belief in the responsibility of Israel, and the truth of his statement. It is contended that this evidence with respect to the second report shows conclusively that plaintiffs knew of the falsity of the representations made by Israel prior to the actual receipt of the goods by him, and that, therefore, they were guilty of negligence in not regaining possession while the goods were in transit; that, by not exercising the right to stop the goods in transit after the knowledge of the fraud so acquired, they elected to ratify the contract of sale, and are therefore es-

topped from maintaining this action to rescind it; and that
such evidence conclusively proves that plaintiffs did not per-
mit the goods to reach the actual possession of Israel in the
belief that the false and fraudulent representations made by
Israel to them were true.    It cannot be said, as a matter of
law, that plaintiffs ratified or affirmed the contract of sale by
their omission to retake the goods prior to the time when the
same reached the hands of Israel.    Nor, as a matter of law,
is negligence in not retaking the goods to be presumed from
such omission.    Neither are the elements of an estoppel pres-
ent.    Nothing in the report of the Bradstreet Company com-
municated to plaintiffs on July 2d may be said to have the
necessary effect of destroying or lessening the belief which it
is admitted plaintiffs had in the truth of the statement ema-
nating from Israel himself.    It is quite plain that the plain-
tiffs, under the circumstances, were not bound, in law, to dis-
regard and cease to believe the statement of their debtor.
Such portions of the report of July 2d as reflected upon the
financial condition of Israel were based entirely upon rumor.
A merchant of ordinary business prudence would, we think,
be likely at least to question and doubt the propriety and
safety of stopping goods in transit for mere insolvency of the
debtor (which would affirm the sale), or of retaking them from
the constructive or actual possession of the purchaser for fraud
(which, if proved, would avoid the sale), and might well de-
cline to incur the risk incident to either act, if the only infor-
mation concerning the insolvency, in the one case, or the
fraudulent representations, in the other, were such as that
imparted by the last report.    Neither omission to stop the
goods before they reached Helena, nor the failure to retake
them prior to their transfer to the assignee (who is not a good-
faith purchaser for value), may, under the facts disclosed by
the record, be deemed an affirmance of the sale.    We cannot
say that the inference from the evidence leads irresistibly, or
even points, to the conclusion that plaintiffs were guilty of
negligence, or that their delay and nonaction had the effect of
a waiver.    The duty of believing the rumor set out in the re-

port was not imposed upon plaintiffs, and they were warranted in taking the positive statement of Israel to be true. The court below necessarily so found, and we perceive no reason why its decision should be disturbed.

There being no error in the record, the judgment and order refusing a new trial are affirmed.

*Affirmed.*

